UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| R.L., individually and in the capacity of durable power of attorney of M.L., <br><br> Plaintiff, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, JUSTWORKS EMPLOYMENT GROUP, LLC, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [ECF NO. 49] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART [ECF NO. 48] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:23-cv-00494-DBB-DAO <br><br> District Judge David Barlow |

Before the court is Plaintiff R.L.'s Motion for Summary Judgment,[1] Defendants Aetna Life Insurance Company ("Aetna") and Justworks Employment Group, LLC's ("Justworks") Motion for Summary Judgment,[2] and both motions' response[3] and reply[4] briefing. Plaintiff claims that Defendants wrongly denied insurance coverage under the Employee Retirement Income Security Act of 1974 ("ERISA") and Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA" or the "Parity Act"). Having reviewed the briefing and the case law, the court finds that oral argument is not necessary.[5]

---

[1] Pl.'s Mot. for Summ. J. ("Pl.'s MSJ"), ECF No. 49, filed November 25, 2025.

[2] Defs.' Mot. for Summ. J. (Defs.' MSJ), ECF No. 48, filed November 25, 2025.

[3] Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp."), ECF No. 59, filed January 12, 2026; Defs.' Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Opp."), ECF No. 58, filed January 12, 2026.

[4] Defs.' Reply in Supp. of its Mot. for Summ. J. ("Defs.' Reply"), ECF No. 62, filed January 30, 2026; Pl.'s Reply in Supp. of his Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 63, filed January 30, 2026.

[5] *See* DUCivR 7-1(g).

**BACKGROUND**

**I.      Plan Coverage and Relevant Guidelines**

Plaintiff R.L. was a participant in an employer-sponsored health insurance plan (the "Plan") issued by Aetna to Justworks.[6] The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[7] R.L.'s child, M.L., was a beneficiary of the Plan.[8] Aetna is the Plan's claims administrator.[9] R.L. and M.L. reside in Dallas County, Texas.[10]

The Plan, under the heading "How you and we will interpret this Certificate[,]" states: "you [(Plaintiff)] are bound by our [(Aetna)] interpretation of this Certificate when we administer your coverage, so long as we use reasonable discretion."[11]

The Plan defines covered services as "health care services that meet these three requirements:"

> • They are listed in the Eligible Health Services under Your plan section.
> • They are not carved out in the What Your plan doesn't cover – Exclusions and limitations section. (We refer to this section as the "Exclusions" section.)
> • They are not beyond any limits in the Schedule of Benefits.[12]

In the Exclusions section, the Plan further clarifies. "We [(Aetna)] do not cover Services that are not listed in this certificate as being covered."[13]

For coverage of skilled nursing facilities, the Plan states:

> We cover inpatient Skilled Nursing Facility care. The types of Skilled Nursing Facility care services that are eligible for coverage include:

---

[6] Pl.'s MSJ 3; Defs.' MSJ 3.
[7] Pl.'s MSJ 3; Defs.' MSJ 3; *see generally* 29 U.S.C. §§ 1001–1461.
[8] Pl.'s MSJ 3; Defs.' MSJ 3.
[9] Pl.'s MSJ 3; Defs.' Opp. 2; Administrative Record ("AR") 1313, 2100, ECF No. 69, filed May 7, 2026.
[10] AR 199, 440.
[11] AR 599.
[12] AR 517.
[13] AR 568.

• Room and Board, up to the Semi-Private Room rate

• Services and supplies that are provided during your Stay in a Skilled Nursing Facility.[14]

The Plan further defines a "Skilled Nursing Facility" as "[a] facility specifically licensed as a Skilled Nursing Facility by applicable state and federal laws to provide skilled nursing care."[15]

For coverage of "Mental Health Treatment[,]" the Plan states:

We cover inpatient mental health care services relating to the diagnosis and treatment of mental, nervous and emotional disorders comparable to other similar Hospital, medical and surgical coverage provided under this Certificate. Coverage for inpatient services for mental health care is limited to facilities defined in New York Mental Hygiene Law Section 1.03(10), such as:

• A psychiatric center or inpatient facility under the jurisdiction of the New York State Office of Mental Health;

• A state or local government run psychiatric inpatient facility;

• A part of a Hospital providing inpatient mental health care services under an operating certificate issued by the New York State Commissioner of Mental Health;

• A comprehensive psychiatric emergency program or other facility providing inpatient mental health care that has been issued an operating certificate by the New York State Commissioner of Mental Health; and, in other states, to similarly licensed or certified facilities.

We also cover inpatient mental health care services relating to the diagnosis and treatment of mental, nervous and emotional disorders received at facilities that provide residential treatment, including Room and Board charges. Coverage for residential treatment services is limited to facilities defined in New York Mental Hygiene Law Section 1.03(33) and to residential treatment facilities that are part of a comprehensive care center for eating disorders identified pursuant to Article 27-J of the New York Public Health Law; and, in other states, to facilities that are licensed or certified to provide the same level of treatment.[16]

---

[14] AR 684.
[15] AR 616.
[16] AR 542.

The Plan further defines "Residential treatment facility (mental disorders)" in the "Glossary"

section as:

> An institution specifically licensed as a residential treatment facility by applicable state and federal laws to provide for mental health residential treatment programs. And is credentialed by **Aetna** or is accredited by one of the following agencies, commissions or committees for the services being provided:
> - The Joint Commission (TJC)
> - The Committee on Accreditation of Rehabilitation Facilities (CARF)
> - The American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP)
> - The Council on Accreditation (COA)
>
> In addition to the above requirements, an institution must meet the following for Residential Treatment Programs treating mental disorders:
> - A behavioral health provider must be actively on duty 24 hours per day for 7 days a week.
> - The patient must be treated by a psychiatrist at least once per week.
> - The medical director must be a psychiatrist.
> - Is not a wilderness treatment program (whether or not the program is part of a licensed residential treatment facility or otherwise licensed institution).[17]

The Plan also contains a Texas-specific "Extraterritorial booklet-certificate

amendment."[18] This amendment states "[i]mportant note: The following apply only if you live in

Texas. The benefits below will apply instead of those in your booklet-certificate."[19]

## II.    Treatment and Coverage at Outback

M.L. received treatment at Outback Therapeutic Expeditions ("Outback") from May 5,

2020, to July 30, 2020.[20]

Aetna denied Plaintiff's initial request for coverage of M.L.'s treatment at Outback. The

denial letter stated: "We are denying coverage for Residential mental health. The plan does not

---

[17] AR 615.
[18] AR 809, 1824.
[19] *Id.*
[20] Pl.'s MSJ 6; Defs.' MSJ 6.

4

provide coverage for care in a wilderness treatment program. Therefore, residential mental health is not covered under the terms of the plan."[21]

R.L. appealed the decision, asserting that (1) Outback was not a "wilderness" treatment program but rather an "intermediate outdoor behavioral health" program, (2) Outback is a "Provider" as defined in the Plan, and (3) outdoor behavioral health programs are not excluded under the Plan.[22] The appeal further argued that the Plan violated MHPAEA.[23]

On this level-one appeal, Aetna upheld the denial.[24] The denial letter stated the treatment was not covered because "[w]ilderness programs are not a covered benefit under the plan."[25] The letter then cites to the Plan, stating: "According to the Booklet-Certificate under 'What Your plan doesn't cover – Exclusions and limitations:' 'Services Not Listed. We do not cover Services that are not listed in this certificate as being covered.'"[26] The denial letter then turns to the Plan's definition of "Eligible Health Services" as "health care services . . . listed in the *Eligible Health Services under Your plan* section and not carved out or limited in the *Exclusions* section or in the Schedule of Benefits."[27]

Plaintiff then submitted a level-two appeal, asserting essentially the same arguments as in the first appeal and that Aetna did not adequately respond to those arguments in the first appeal decision.[28]

---

[21] AR 210.
[22] AR 1176–86.
[23] *Id.*
[24] AR 1192–93.
[25] AR 1193.
[26] *Id.*
[27] *Id.*
[28] AR 1206–13.

Aetna again denied Plaintiff's appeal.[29] The denial letter repeated that "Under the provisions of your medical plan, wilderness treatment programs are not covered."[30] The denial letter then cited to the same sections of the Plan it referred to in the previous denial letter.

### III.   Treatment and Coverage at Vista

M.L. received treatment at Vista Stage ("Vista") from July 30, 2020, to March 18, 2021.[31]

Aetna denied coverage for M.L.'s treatment at Vista, stating:

> We reviewed information received about the member's condition and circumstances and the member's benefit plan. We are denying coverage for Mental Health Residential Treatment. The following specific out-of-network Residential Treatment Center criteria or provisions were not met: Facility is credentialed by Aetna or is accredited by one of the following agencies, commissions or committees for the services being provided: The Joint Commission (TJC) The Committee on Accreditation of Rehabilitation Facilities (CARF). The American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP), The Council on Accreditation (COA); Also the patient must be treated by a psychiatrist at least once per week. Therefore, Mental Health Residential Treatment is not covered under the terms of the plan.[32]

Plaintiff appealed the decision, asserting that the treatment at Vista was a covered service as an inpatient mental health care service. Plaintiff argued that Vista was licensed by the State of Utah to provide residential treatment services, which is all that the covered services section required.[33] Plaintiff also argued that the Plan violated MHPAEA.[34]

---

[29] AR 1301–03.
[30] AR 1302.
[31] Defs.' MSJ 7; Pl.'s MSJ 9.
[32] AR 2–3.
[33] AR 330–35.
[34] *Id.*

In response, Aetna upheld the denial.[35] Aetna stated that "After reviewing the available information, it has been determined that Vista Adolescent Treatment is not eligible as a Residential Treatment Facility."[36] The denial letter then quoted the Glossary definition of Residential treatment facilities, which required the facility to be credential by either Aetna or one of four different organizations.[37]

Plaintiff then submitted a level-two appeal, asserting that Aetna failed to meaningfully respond to Plaintiff's arguments and that treatment at Vista was a covered benefit under the Plan.[38] Plaintiff also again argued that the denial violated MHPAEA.[39]

Aetna upheld the denial in their level-two appeal decision.[40] Defendants denied coverage for treatment at Vista because it "does not meet requirements for a Residential Treatment Center as it is missing accreditations and does not offer treatment with a psychiatrist at least once a week."[41] The denial letter then again pointed to the Plan's definition of residential treatment facility in the Glossary.[42]

## IV. Plaintiff's Letter Requesting Plan Documents

After the completion of all the appeals, Plaintiff submitted a letter to the Plan Administrator in July of 2023 requesting various Plan documents.[43] The letter was sent to Justworks Employment Group LLC, 130 7th Avenue, Number 249, New York, New York

---

[35] AR 2034–36.
[36] AR 2035.
[37] Id.
[38] AR 2047–51.
[39] AR 2050.
[40] AR 2089–91.
[41] AR 2090.
[42] Id.
[43] Letter to Plan Administrator, ECF No. 49-1, filed November 25, 2025; Green Card Certified Mail Receipt, ECF No. 49-2, filed November 25, 2025.

10011.[44] Plaintiff sent this letter via certified mail and requested a receipt.[45] The associated USPS tracking number update states that "[y]our item was delivered to the front desk, reception area, or mail room . . . ."[46]

The letter was sent to the address provided for the Plan Administrator in the 2019 Plan.[47] However, the 2020 Plan changed the Plan Administrator's address to "PO Box 7119, New York, NY 10008."[48] Justworks denies having ever received the letter.[49]

## STANDARD

Generally, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[50] "Where, as here, the parties in an ERISA case both moved for summary judgment . . . , summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[51]

---

[44] *Id.*
[45] *Id.*
[46] USPS Tracking, ECF No. 49-3, filed November 25, 2025.
[47] AR 620.
[48] AR 768.
[49] Defs.' Resp. to Pls.' First Set of Request for Admissions 6–9, ECF No. 58-1, filed January 12, 2026; Email Correspondance 1–3, ECF No. 58-2, filed January 12, 2026.
[50] Fed. R. Civ. P. 56(a).
[51] *Carlile v. Reliance Standard Life Ins.*, 988 F.3d 1217, 1221 (10th Cir. 2021) (cleaned up).

## DISCUSSION

The parties present three issues: (1) whether Defendants' denial of benefits violated ERISA; (2) whether Defendants violated MHPAEA; and (3) whether Plaintiff is due statutory penalties for the Plan Administrators' failure to respond to Plaintiff's letter requesting Plan documents. The court considers each in turn.

## I.   ERISA

### A.   Standard of Review

First, the court must determine what standard of review to apply to the ERISA claim. Defendants argue that their interpretation of the Plan is only subject to arbitrary and capricious review, while Plaintiff asserts it should be reviewed de novo. The parties present three issues here: (1) whether the Plan grants Aetna discretionary authority; (2) whether Aetna violated ERISA's procedural requirements and thus forfeited its discretionary authority; and (3) whether state law bans Aetna from exercising discretionary authority.

#### 1.   Plan's Discretionary Authority

The Supreme Court has held that "a denial of benefits challenged under [ERISA] must be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[52] Where the plan administrator has discretionary authority, courts "employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[53] The Tenth Circuit "has been comparatively liberal in construing language to trigger the more deferential

---

[52] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).
[53] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).

standard of review under ERISA."[54] For example, "a policy provision requiring claimants to submit proof 'satisfactory to [the plan administrator]' suffices to give the administrator discretion to determine facts relating to a disability."[55] Defendants carry the burden to demonstrate that the arbitrary and capricious standard applies.[56]

The arbitrary and capricious standard of review applies here because the Plan gives discretionary authority to Aetna. The Plan states that "you [(Plaintiff)] are bound by our [(Aetna)] interpretation of this Certificate when we administer your coverage, so long as we use reasonable discretion."[57] This language clearly grants Aetna the authority to interpret the Plan with "reasonable discretion."

### 2.  ERISA's Procedural Requirements

Plaintiff next argues that Defendants forfeited their right to arbitrary and capricious review because they failed to comply with ERISA's procedural requirements. "Under Tenth Circuit precedent, de novo review is appropriate despite a plan's conferral of discretion on a plan administrator if . . . the case involves 'serious procedural irregularities' . . . ."[58] The procedure, set forth in 29 U.S.C. § 1133 and in related implementing regulations, requires "a meaningful dialogue between ERISA plan administrators and their beneficiaries."[59] When administrators issue denial letters, they need to explain the specific reason(s) for their decision and the specific

---

[54] *Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 676 (10th Cir. 2019) (citing *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1268 (10th Cir. 2002)).
[55] *Id.*
[56] *M.S. v. Premera Blue Cross*, 553 F. Supp. 3d 1000, 1019 (D. Utah 2021).
[57] AR 599.
[58] *James C. v. Aetna Health & Life Ins. Co.*, 499 F. Supp. 3d 1105, 1117 (D. Utah 2020) (quoting *Martinez v. Plumbers & Pipefitters Nat. Pension Plan*, 795 F.3d 1211, 1215 (10th Cir. 2015)).
[59] *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1300 (10th Cir. 2023).

plan provision on which the determination is based.[60] But "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to de novo review."[61]

Here, Plaintiff asserts that Defendants did not take into account the licensing and accreditation materials that Plaintiff provided in his appeal. Plaintiff does not clarify in which decision Defendants failed to consider this information. Defendants' level-one denial letter for the treatment at Outback specifically states that Aetna "reviewed all available information, including: . . . license as outdoor youth treatment, [and the] certificate of accreditation . . . ."[62] Similarly, Defendants' level-two denial letter states that Aetna reviewed all the information from the level-one appeal,[63] and their denial letters for the treatment at Vista likewise state that Aetna reviewed all the available information, including the documentation submitted by Plaintiff in their appeal.[64]

In any event, Defendants' failure to consider Plaintiff's provided licensing and accreditation materials would not constitute a serious procedural deficiency on this record. For the Outback denials, Defendants relied on their determination that Outback was a wilderness

---

[60] *Id*. at 1299 (citing 29 C.F.R. § 2560.503-1(g)(1)).

[61] *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1317 (10th Cir. 2009) (citing *Gilbertson*, 328 F.3d at 634). The Tenth Circuit has questioned the continued viability of this exception in light of regulatory changes. *See, e.g.*, *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 828 (10th Cir. 2008) ("In January 2002, amendments to the regulations took effect that have called into question the continuing validity of the substantial compliance rule."). However, "it remains precedent to not apply a hair-trigger rule requiring de novo review whenever the plan administrator, vested with discretion, failed in any respect to comply with the procedures mandated by this regulation." *J.L. v. Anthem Blue Cross*, 510 F. Supp. 3d 1078, 1086 (D. Utah 2020), *appeal dismissed* (May 5, 2021) (quoting *LaAsmar*, 605 F.3d at 799) (internal quotation marks omitted).

[62] AR 1192.

[63] AR 1301.

[64] AR 441, 496.

therapy program that was not covered under the Plan.[65] Plaintiff disagrees with this

determination, arguing that the licensing and accreditation materials support coverage;

nonetheless, Defendants provided a clear rationale and basis for their decision.[66] Similarly, for

the Vista denials, Defendants determined that Vista lacked the accreditations required by the

Plan and cited to the specific accreditations required.[67] The licensing and accreditation material

Plaintiff provided would not have any effect on the reasoning Defendants gave for their denial.

Overall, these determinations simply reflect substantive decision-making, not procedural

deficiencies.

### 3.    State Law Bans Discretionary Authority Clauses

Lastly, Plaintiff briefly argues that the court should review de novo because state law in

Texas and Utah ban discretionary authority clauses. But Plaintiff presents no argument as to

whether Texas, Utah, or New York state law should apply—and the law of these different states

would likely lead to different results here. For Utah law, the Tenth Circuit has ruled that the Utah

state law banning discretionary authority clauses is preempted by ERISA.[68] However, for Texas

law, multiple federal courts have found that they must apply a de novo standard of review

because of Texas's ban on discretionary authority clauses, though none of these cases address

---

[65] AR 1192–93, 1301–02.

[66] *Id*.

[67] AR 2034–36, 2090.

[68] *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1149 (10th Cir. 2009).

12

whether the law may be preempted by ERISA.[69] And Plaintiff does not meaningfully engage with New York law, even though the Plan specifies that it governs.[70]

Plaintiff does not provide the arguments necessary for this court to consider which of these state laws apply, whether that state law prohibits discretionary authority clauses, or whether ERISA preempts that state law.[71] Accordingly, this argument for de novo review fails.

In sum, the court finds that the Plan invests discretionary authority in Defendants and that Defendants did not engage in any serious procedural deficiencies such that they have forfeited arbitrary and capricious review. Thus, the court applies an arbitrary and capricious review standard to Plaintiff's ERISA claim.

### B.    Texas-specific Plan Amendments

As an additional threshold issue, the court also addresses Defendants' use of the Texas-specific portions of the Plan. Defendants present arguments that the Texas-specific amendments supersede the more general language on which Plaintiff relies, and that these amendments do not cover Plaintiff's claims here. Plaintiff responds that Defendants did not cite or refer to the Texas-specific amendments in their denial letters and cannot now change the basis for denial on appeal.

---

[69] *See*, *e.g.*, *Jackson v. Aetna Life Ins. Co.*, No. CV 16-15837, 2017 WL 6501599, at *3–4 (E.D. La. Dec. 19, 2017); *Bunner v. Dearborn Nat'l Life Ins. Co.*, No. CV H-18-1820, 2020 WL 3493760, at *7 (S.D. Tex. May 26, 2020), *report and recommendation adopted,* No. CV H-18-1820, 2020 WL 3490611 (S.D. Tex. June 26, 2020); *Jacob v. Unum Life Ins. Co. of Am.*, No. CV 16-17666, 2017 WL 4764357, at *1–5 (E.D. La. Oct. 20, 2017).

[70] AR 514, 662.

[71] *See United States v. Vontress*, No. 22-3119, 2024 WL 5074634, at *4 (10th Cir. 2024) ("[Plaintiff's] cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing needed for us to address his arguments. We decline to make his arguments for him.") (internal citations omitted); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000); *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) ("[T]he court should not assume the role of advocate.").

13

Under Tenth Circuit precedent, the court "will consider only 'those rationales that were specifically articulated in the administrative record as the basis for denying a claim.'"[72] "The reason for this rule is apparent[:] we will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation."[73] A plan administrator may not "treat the administrative process as a trial run and offer a post hoc rationale in district court."[74]

Here, none of Defendants' denial letters regarding treatment at Outback or at Vista referenced the Texas-specific Plan amendments. There is no basis in the denial letters to rely on the Texas-specific Plan amendments now. Accordingly, the court will not consider any of Defendants' arguments newly presented in this litigation regarding the Texas-specific Plan amendments.

### C.   Outback

The court next considers whether Defendants' denial of coverage for treatment received at Outback was arbitrary and capricious under ERISA. Arbitrary and capricious review considers whether the decision had a reasoned basis that is supported by substantial evidence.[75] This includes whether the decision is "consistent with any prior interpretations by the plan administrator, is reasonable in light of any external standards, and is consistent with the purposes of the plan."[76] "Consistent with the purposes of the plan requirements means that a plan

---

[72] *Spradley v. Owens-Illinois Hourly Emps. Welfare Ben. Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (quoting *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007)).
[73] *Id.*
[74] *Id.*
[75] *D.K. v. United Behav. Health*, 67 F.4th 1224, 1236 (10th Cir. 2023).
[76] *Id.*

administrator acts arbitrarily and capriciously if the administrator 'fails to consistently apply the terms of an ERISA plan' or provides 'an interpretation inconsistent with the plan's unambiguous language.'"[77]

"ERISA promotes the interests of plan participants and beneficiaries and contractually defined benefits 'in part by regulating the manner in which plans process benefits claims.'"[78] These standards constitute the minimum requirements for a plan's claims-processing procedure.[79] The procedure, set forth in 29 U.S.C. § 1133 and in related implementing regulations, require "a meaningful dialogue between ERISA plan administrators and their beneficiaries."[80] When administrators issue denial letters, they need to explain the specific reason(s) for their decision and the specific plan provision on which the determination is based.[81] "[I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it."[82] And if plan administrators deny benefits based on their scientific or clinical judgment of the claimant's circumstances, they must explain their reasoning as applied to the terms of the plan.[83]

Here, Defendants denied Plaintiff's claims for treatment at Outback because "[w]ilderness programs are not a covered benefit under the plan."[84] To support their decision, the denial letters pointed to only two, very general, parts of Plan. First, the letter states "According to

---

[77] *Id.* (quoting *Tracy O. v. Anthem Blue Cross & Life Health Ins.*, 807 Fed. Appx. 845, 854 (10th Cir. 2020)).

[78] *David P.*, 77 F.4th at 1299.

[79] *Id.*

[80] *Id.* at 1300.

[81] *Id*. at 1299 (citing 29 C.F.R. § 2560.503-1(g)(1)).

[82] *Id*. at 1300 (quoting *Rasenack*, 585 F.3d at 1326).

[83] *Id*. at 1299 (citing 29 C.F.R. § 2560.503-1(g)(1)(v)(B)).

[84] AR 1193; *see also* AR 1302.

the Booklet-Certificate under "What Your plan doesn't cover – Exclusions and limitations: Services Not Listed. We do not cover Services that are not listed in this certificate as being covered."[85] Second, the denial letters turn to the Plan's definition of "Eligible Health Services" as "health care services … listed in the *Eligible Health Services under Your plan* section and not carved out or limited in the *Exclusions* section or in the Schedule of Benefits."[86] The letters provide no more explanation or rationale. In essence, Defendants' basis for the denial is that Plaintiff's claim isn't covered and that the Plan says that claims that are not covered are not covered. Defendants' denial does not point to the Mental Health section of the Plan[87] and explain why the claim does not fit under that section, nor does it point to any specific exclusions such as those under the definition of Residential treatment facility[88]—despite Plaintiff's appeal bringing up both of those provisions.[89] Defendants' conclusion that wilderness programs are not a covered benefit is not supported by the referenced sections of the Plan. Overall, Defendants' denial is arbitrary and capricious because it fails to assert a reasonable basis for the decision.

"Having concluded that [Defendants'] decision was arbitrary, [the court] may either remand the case to the plan administrator for a renewed evaluation of the claimant's case or we may order an award of benefits."[90] "Which of these two remedies is proper in a given case, however, depends upon the specific flaws in the plan administrator's decision."[91] Generally,

---

[85] *Id.*
[86] *Id.*
[87] *See* AR 542.
[88] *See* AR 615.
[89] AR 1209.
[90] *David P.*, 77 F.4th at 1315 (quoting *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1015 (10th Cir. 2008)) (internal quotations omitted).
[91] *Id.* (quoting *Flinders*, 491 F.3d at 1194).

16

"[r]emand is appropriate if the administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision."[92] "But if the evidence in the record clearly shows that the claimant is entitled to benefits, an order awarding such benefits is appropriate."[93]

Here, Defendants failed to adequately explain the grounds for the decision. But neither has Plaintiff clearly shown that he is entitled to benefits. Therefore, the court will remand Plaintiff's claims to Defendants for further consideration. This remand, however, "does not 'provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record,' and not previously conveyed to Plaintiff."[94] Defendants are limited to properly considering and expounding on rationales already raised.

### D.   Vista

The court next considers whether Defendants' denial of coverage for treatment received at Vista was arbitrary and capricious.

Defendants denied Plaintiff's claims for treatment at Vista because it "does not meet requirements for a Residential Treatment Center as it is missing accreditations and does not offer treatment with a psychiatrist at least once a week."[95] The denial letter then pointed to the Plan's definition of residential treatment facility in the Glossary, which defines a residential treatment facility as:

> An institution specifically licensed as a residential treatment facility by applicable state and federal laws to provide for mental health residential treatment programs. And is credentialed by **Aetna** or is accredited by one of the following agencies, commissions or committees for the services being provided:
> -   The Joint Commission (TJC)

---

[92] *Id.* (quoting *Carlile*, 988 F.3d at 1229).
[93] *Id.*
[94] *Id.* (quoting *Carlile*, 988 F.3d at 1229) (internal citations omitted).
[95] AR 2090; *see also* AR 2035.

- The Committee on Accreditation of Rehabilitation Facilities (CARF)
- The American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP)
- The Council on Accreditation (COA)

In addition to the above requirements, an institution must meet the following for Residential Treatment Programs treating mental disorders:

- A behavioral health provider must be actively on duty 24 hours per day for 7 days a week.
- The patient must be treated by a psychiatrist at least once per week.
- The medical director must be a psychiatrist.
- Is not a wilderness treatment program (whether or not the program is part of a licensed residential treatment facility or otherwise licensed institution).[96]

Plaintiff does not dispute that Vista does not meet these requirements, but instead responds that Vista's treatment is nonetheless covered under the Plan's Eligible Service section because Vista is licensed under state law. That section states, under the subsection "Mental health treatment," that "[Aetna] also cover[s] inpatient mental health care services relating to the diagnosis and treatment of mental, nervous and emotional disorders received at facilities that provide residential treatment, including Room and Board charges."[97] If the facility is not in New York, this includes "facilities that are licensed or certified to provide the same level of treatment."[98]

In sum, Defendants' interpretation of the Plan is reasonable and within the bounds of the arbitrary and capricious standard. Plaintiff correctly points out that under the Eligible Services section, the Plan only requires the facility to be licensed or certified to the same level of treatment as under New York law. But it is a reasonable interpretation for Defendants to also apply the requirements for a residential treatment facility contained in the glossary. While the

---

[96] AR 615, 2035, 2090.
[97] AR 542.
[98] *Id.*

18

Eligible Services section does not explicitly reference the glossary, Defendants applied the "residential treatment facilities" definition, with its additional requirements, to coverage of "facilities that provide residential treatment." This is a reasonable interpretation within Defendants' discretion under the Plan. It is not "an interpretation inconsistent with the Plan's unambiguous language."[99] Indeed, as a matter of contract interpretation, it would be strange not to consider these provisions together, since courts seek to harmonize contract provisions and avoid interpretations which render provisions meaningless.[100] Thus, the court grants Defendants' motion for summary judgment on this claim.

## II.    MHPAEA

"MHPAEA is an amendment to ERISA."[101] It was created by Congress "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[102] "The statute requires employer-sponsored group health plans to ensure treatment limitations for mental health benefits 'are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . and there are no separate treatment limitations that are applicable only . . . to mental health . . . benefits.'"[103] "Disparate treatment limitations that violate the Parity Act can be either

---

[99] *D. K.,* 67 F.4th at 1236 (quoting *Tracy O.*, 807 Fed. Appx. at 854).
[100] Accordingly, this result would be the same under a de novo standard of review.
[101] *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1280 (10th Cir. 2023); *N.R. ex rel. S.R. v. Raytheon Co.*, 24 F.4th 740, 746 (1st Cir. 2022).
[102] *E.W.*, 86 F.4th at 1280 (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)).
[103] *M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1260 (10th Cir. 2024) (quoting 29 U.S.C. § 1185a(a)(3)(A)(ii)).

facial (as written in the language or the processes of the plan) or as-applied (in operation via application of the plan)."[104]

> To plead a Parity Act claim, a plaintiff must:
>
> > (1) [p]lausibly allege that the relevant group health plan is subject to MHPAEA;
> >
> > (2) identify a specific treatment limitation on mental health or substance-use disorder benefits covered by the plan;
> >
> > (3) identify medical or surgical care covered by the plan that is analogous to the mental health or substance-use disorder care for which the plaintiffs seek benefits; and
> >
> > (4) plausibly allege a disparity between the treatment limitation on mental health or substance-use disorder benefits as compared to the limitations that defendants would apply to the medical or surgical analog.[105]

On summary judgement, the claimant bears the burden to show by a preponderance of the evidence that a plan's "limitations on mental health care are . . . more restrictive than medical surgical analogs."[106] A court affords no deference to a benefits administrator when reviewing a Parity Act claim "because the interpretation of a statute is a legal question."[107]

The parties agree on the first three elements: The Plan here is subject to MHPAEA, has specific limits on mental health benefits, and skilled nursing facilities are the appropriate analog to the residential treatment center benefits at issue here.[108] This leaves just the final element in

---

[104] *Brian J. v. United Healthcare Ins. Co.*, 667 F. Supp. 3d 1124, 1135 (D. Utah 2023) (citation omitted).
[105] *E.W.*, 86 F.4th at 1283.
[106] *M.Z. v. Blue Cross Blue Shield of Ill.*, No. 1:20-cv-00184, 2023 WL 2634240, at *21 (D. Utah Mar. 24, 2023).
[107] *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1258 (D. Utah 2016).
[108] Defs.' MSJ 20, 23–24; Pl.'s MSJ 26.

20

dispute—whether there is a disparity, either facially or as-applied, between the Plan's coverage of residential treatment centers and skilled nursing facilities.

Plaintiff first challenges the Plan facially, asserting that it only requires skilled nursing facilities to be licensed under state and federal law, while imposing "much more complicated and extensive nonquantitative treatment limitations" on residential treatment facilities.[109]

For coverage of skilled nursing facilities, the Plan states:

We cover inpatient Skilled Nursing Facility care. The types of Skilled Nursing Facility care services that are eligible for coverage include:

• Room and Board, up to the Semi-Private Room rate

• Services and supplies that are provided during your Stay in a Skilled Nursing Facility.[110]

The Plan further defines a "Skilled Nursing Facility" as "[a] facility specifically licensed as a Skilled Nursing Facility by applicable state and federal laws to provide skilled nursing care."[111]

In comparison, for coverage of "Mental Health Treatment[,]" the Plan states:

We cover inpatient mental health care services relating to the diagnosis and treatment of mental, nervous and emotional disorders comparable to other similar Hospital, medical and surgical coverage provided under this Certificate. Coverage for inpatient services for mental health care is limited to facilities defined in New York Mental Hygiene Law Section 1.03(10), such as:

• A psychiatric center or inpatient facility under the jurisdiction of the New York State Office of Mental Health;

• A state or local government run psychiatric inpatient facility;

---

[109] Pl.'s MSJ 26–27.
[110] AR 684.
[111] AR 616.

21

• A part of a Hospital providing inpatient mental health care services under an operating certificate issued by the New York State Commissioner of Mental Health;

• A comprehensive psychiatric emergency program or other facility providing inpatient mental health care that has been issued an operating certificate by the New York State Commissioner of Mental Health; and, in other states, to similarly licensed or certified facilities.

We also cover inpatient mental health care services relating to the diagnosis and treatment of mental, nervous and emotional disorders received at facilities that provide residential treatment, including Room and Board charges. Coverage for residential treatment services is limited to facilities defined in New York Mental Hygiene Law Section 1.03(33) and to residential treatment facilities that are part of a comprehensive care center for eating disorders identified pursuant to Article 27-J of the New York Public Health Law; and, in other states, to facilities that are licensed or certified to provide the same level of treatment.[112]

The Plan further defines "Residential treatment facility (mental disorders)" as:

An institution specifically licensed as a residential treatment facility by applicable state and federal laws to provide for mental health residential treatment programs. And is credentialed by **Aetna** or is accredited by one of the following agencies, commissions or committees for the services being provided:
-    The Joint Commission (TJC)
-    The Committee on Accreditation of Rehabilitation Facilities (CARF)
-    The American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP)
-    The Council on Accreditation (COA)

In addition to the above requirements, an institution must meet the following for Residential Treatment Programs treating mental disorders:
•    A behavioral health provider must be actively on duty 24 hours per day for 7 days a week.
•    The patient must be treated by a psychiatrist at least once per week.
•    The medical director must be a psychiatrist.
•    Is not a wilderness treatment program (whether or not the program is part of a licensed residential treatment facility or otherwise licensed institution).[113]

---

[112] AR 542.
[113] AR 615.

Plaintiff argues that the definitions applied to mental health treatment and residential treatment facilities are much more restrictive than those for skilled nursing facilities. Specifically, Plaintiff asserts that the Plan provides blanket coverage for licensed skilled nursing facilities, while applying much more extensive requirements on residential treatment facilities in addition to state and federal licensing. Defendants respond that skilled nursing facilities licensing requirements impose far greater quality controls than those the Plan imposes on residential treatment facilities. Thus, even though the Plan's quality controls for residential treatment facilities are longer, the actual limitations on residential treatment facilities and skilled nursing facilities are comparable.

First, the Mental Health Treatment coverage requirements (not including the definition of a residential treatment facility), though much longer than those for a skilled nursing facility, essentially boil down to requiring state licensing. The Mental Health Treatment section identifies the specific New York law under which the facilities must fit, provides examples of the types of facilities that would be eligible, and requires that facilities in other states be licensed by their respective state to provide the same level of treatment. While the writing is much more extensive, Plaintiff has not presented any evidence that the Mental Health Treatment requirements for state licensing are any more restrictive in fact than the licensing requirements for skilled nursing facilities.

Next, while the definition of residential treatment facility imposes additional requirements beyond licensing, Plaintiff has not met their burden to show that these requirements are more restrictive than those imposed on skilled nursing facilities. The Plan requires skilled

23

nursing facilities to be licensed by federal law.[114] This includes meeting the requirements of 42 U.S.C. § 1395i-3.[115] This statute imposes extensive requirements comparable to those required by the Plan for residential treatment facilities, including quality of life requirements, written plans of care, comprehensive assessments by registered professional nurses within 14 days of admission and "promptly" after a significant change in condition, licensing and training requirements for the workers, residents' rights requirements, and more.[116] Specifically comparable, the statute requires "a skilled nursing facility [to] provide 24-hour licensed nursing service which is sufficient to meet nursing needs of its residents and must use the services of a registered professional nurse at least 8 consecutive hours a day, 7 days a week"[117]; the Plan requires for "[a] behavioral health provider [to] be actively on duty 24 hours per day for 7 days a week."[118] The statute requires "that the medical care of every resident be provided under the supervision of a physician"[119]; the Plan requires the "medical director [to] be a psychiatrist."[120] The statute requires a written plan of care which is periodically reviewed; a comprehensive assessment conducted upon admission, promptly after a significant change in the resident's condition, or, at a minimum, at least once every 3 months; and ongoing care as necessary to meet the resident's needs;[121] the Plan requires the patient to be treated by a psychiatrist weekly.[122] These requirements, while not exactly the same, are reasonably comparable on their face.

---

[114] AR 616.
[115] 42 U.S.C. § 1395i-3. Plaintiff has not disputed that this statute applies.
[116] *Id.*
[117] 42 U.S.C. § 1395i-3(b)(4)(C)(i).
[118] AR 615.
[119] 42 U.S.C. § 1395i-3(b)(6).
[120] AR 615.
[121]  42 U.S.C. § 1395i-3(b)(2), (b)(3), (b)(4)(A), (b)(4)(C).
[122] AR 615.

Plaintiff does not meaningfully discuss these requirements. And the differences may be easily explained by the differences necessary for mental health care versus medical health care. Overall, "the Parity Act only requires comparability, not equality, between limitations for Residential Treatment Centers and Skilled Nursing Facilities."[123] Plaintiff has not met its burden to show that these requirements create a disparity in coverage.[124]

Lastly, the Plan requires residential treatment facilities to be accredited by Aetna or one of four organizations in addition to being licensed by state and federal law, while skilled nursing facilities need only be licensed by state and federal law. But Plaintiff fails to provide the court with the evidence required to show that these accreditation requirements create a disparity. Plaintiff has not provided any evidence showing that these accreditations are more onerous than the state and federal licensing required for skilled nursing facilities. Nor is there any evidence that this accreditation requirement significantly limits the choices of facilities available for coverage.

Plaintiff also briefly argued that Defendants committed an as-applied MHPAEA violation. Plaintiff asserted that Defendants only covered mental health treatment "in very limited facilities."[125] But Plaintiff provides no evidence supporting that claim. Neither does Plaintiff provide any comparator for his as-applied challenge.

---

[123] *James C. v. Anthem Blue Cross & Blue Shield*, 2:19-cv-38, 2021 WL 2532905, at *20 (D. Utah June 21, 2021).
[124] The court notes that it may be possible that these requirements are not comparable. Perhaps expert testimony or some other evidence could have shown that the licensing requirements for skilled nursing facilities are not comparable to the Plan's requirements for residential treatment facilities. But Plaintiff has failed to make that showing here, and he bears the burden to do so.
[125] Pls.' MSJ 29.

Overall, Plaintiff failed to meet his burden to show by a preponderance of the evidence that the Plan's "limitations on mental health care are . . . more restrictive than medical surgical analogs."[126] The coverage terms for mental health treatment at residential treatment facility being longer and more expansive than the coverage terms for a skilled nursing facility does not, in fact, mean that there is a disparity in coverage. And when the court considers the actual restrictions, the court finds that they are comparable—or at least that Plaintiff has failed to show any meaningful disparity.[127]

### III.    Plan Documents Request

Lastly, Plaintiff requests statutory penalties for Defendants' failure to respond with certain documents when requested. 29 U.S.C. § 1024(b)(4) requires plan administrators provide plan participants with a copy of certain documents if the participant requests them in writing.[128] If a Plan Administrator "fails or refuses to comply with a request for any information" from a plan participant or beneficiary within 30 days after receipt of such request, the Plan Administrator "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."[129]

Plaintiff asserts that he submitted the required request two different times: First, he requested the documents as part of the level-one appeal to Aetna on May 24, 2022.[130] Second, he

---

[126] *M.Z.*, 2023 WL 2634240, at *21.

[127] Defendants also argue that Plaintiff's MHPAEA claims are duplicative of their ERISA claims. Since the court finds that the MHPAEA claims fail on the merits, the court does not reach this additional defense.

[128] 29 U.S.C. § 1024(b)(4).

[129] 29 U.S.C. § 1132(c)(1)(B). The statute initially set the maximum daily penalty at $100 per day but it has subsequently been raised to $110 per day. *See* 29 C.F.R. § 2575.502c-1.

[130] *See* AR 1186.

sent a letter to both Aetna and Justworks on July 18, 2023 requesting the documents.[131] But neither of these requests are sufficient to create statutory liability.

First, Plaintiff has not made any showing that the level-one appeal was provided to the Plan Administrator or that Aetna was an agent of Justworks. Justworks is the Plan Administrator, and Plaintiff has only asserted that the level-one appeal was sent to Aetna.[132] Plaintiff's conclusory statement that Aetna was an agent for the Plan Administrator is not sufficient for this court to make that finding. Thus, the request for documents contained in the level-one appeal was not sufficient to attach liability under the statute.

Second, the July 18, 2023, letter was sent to an outdated and incorrect address, despite Plaintiff having access to the correct, updated address. Plaintiff sent the letter to: Justworks Employment Group LLC, 130 7th Avenue, Number 249, New York, New York 10011.[133] This address was previously the correct address for Justworks and is contained in the 2019 Plan documents.[134] However, the 2020 Plan documents, which are in the record and to which Plaintiff had access in 2023, updated the address.[135] The new address is Justworks Employment Group LLC, PO Box 7119, New York, New York 10008.[136] The court cannot require a Plan Administer to forever retain access to any address they have ever provided to beneficiaries. There may be some reasonable amount of time that a Plan Administer should retain the ability to receive mail at an address even after it has moved, but this is not that case because Plaintiff had access to the

---

[131] Letter to Plan Administrator; Green Card Certified Mail Receipt.
[132] AR 768.
[133] Letter to Plan Administrator; Green Card Certified Mail Receipt.
[134] AR 620.
[135] AR 768.
[136] Id.

updated address. Where the address the Plaintiff used was outdated by three years, Justworks

denied ever receiving the letter, and Plaintiff had access to the correct, updated address, the court

will not find liability.

In short, Plaintiff never sent a request to Justworks that would start the 30-day statutory

countdown for a Plan Administer to respond.[137] As such, Plaintiff cannot receive any statutory

penalties for Justworks' failure to respond.

**ORDER**

Plaintiff's Motion for Summary Judgment is GRANTED in PART and DENIED in

PART. Defendants' Motion for Summary Judgment is GRANTED in PART and DENIED in

PART. Plaintiff's claim for benefits for treatment received at Outback is remanded for further

consideration. All other claims are dismissed.

Signed July 28, 2026.

BY THE COURT:

_____
David Barlow
United States District Judge

---

[137] The court does not find the statutory requirements met. But even if they were, the court would exercise its discretion granted under the statute to reduce the statutory penalties to zero under these circumstances.